UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SILVANNA D. WHITWORTH,<br><br>                  Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                  Respondent. | Case No. 2:11-cv-00216-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Silvanna D. Whitworth's ("Petitioner") Petition for Review of the Respondent's denial of social security benefits, filed May 12, 2011. *Petition*, Dkt. 1. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the decision of the Commissioner.

**Procedural and Factual History**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on February 15, 2009, alleging disability due to lumbrosacral degenerative disk disease, depressive disorder, and anxiety disorder.  Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge ("ALJ") Moira Ausems held a hearing on January 27, 2010, taking testimony from Petitioner and a vocational expert.  (AR 28-52.)  ALJ Ausems issued a decision finding Petitioner not disabled on March 31, 2010.  (AR 15-24.)  Petitioner filed a timely appeal to the Appeals Council which denied her request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1-4.)  Petitioner appealed this final decision to this Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 44 years old.  She has a twelfth grade education and has taken some college classes.  Her past relevant work includes telemarketer (sales) and internet marketer (advertising).  (AR 23, 45-47, 112, 122.)

**II.**

**Sequential Process**

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant has the burden of proving a disability in the first four steps of the sequential evaluation after

MEMORANDUM DECISION AND ORDER - 2

which the burden moves to the Commissioner at the fifth step. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of February 2, 2008. (AR 15.)

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner's lumbrosacral degenerative disk disease, depressive disorder, and anxiety disorder are "severe" within the meaning of the Regulations. (AR 17.)

Step three asks whether the claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner did not have an impairment or combination of impairments that meets or equals the criteria for the listed impairments. (AR 18.) If the claimant's impairments or combination of impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

At step four, the ALJ found Petitioner was able to perform a wide range of light work (limited to the performance of semi-skilled SVP-4 level tasks due to the effects of mental symptomatology, pain, and medication side effects) and her past relevant work as a telephone solicitor. (AR 19-23.)

If the claimant demonstrates an inability to perform past relevant work, the burden

shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education, and work experience.  Here, having found Petitioner not disabled at step four, the ALJ was not required to proceed to step five.  However, the ALJ alternatively found that even if Petitioner could not perform her past relevant work, she retained the capacity to perform a wide range of sedentary jobs existing in the economy such as surveillance system monitor and charge account clerk.  (AR 23-24.)  Accordingly, the ALJ found that Petitioner was not disabled even if she were limited to the greater degree described in a hypothetical to the vocational expert.  (AR 23-24.)

## III.

## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotations omitted). It is more than a scintilla but less than a preponderance. *Id.*

It is well-settled that if there is substantial evidence to support the decision of the ALJ, the decision must be upheld "if supported by inferences reasonably drawn from the record . . ." even "where the evidence is susceptible to more than one rational interpretation." *Id.* The Court may not substitute its judgment for that of the ALJ. *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

## IV.

## Discussion

Petitioner raises a single issue on appeal: Whether her spinal injuries meet or equal the severity requirements set out in Listing 1.04(A), Appendix 1. She requests either a reversal of the ALJ's decision or a remand for consideration of new evidence.

A portion of Petitioner's argument rests on a magnetic resonance imaging ("MRI") study done in September of 2002 that was not part of the record before the ALJ. The other portion of her argument is based on the Residual Functional Capacity ("RFC") Questionnaire submitted by Dr. Robert Rust, the Petitioner's primary treating doctor. (AR 263-67.) In other words, she contends that the MRI and the RFC together establish

the requisite characteristics of the spinal listing. Therefore, Petitioner's listing argument fails if either the 2002 MRI or the Rust RFC is not considered.

The Court may consider the 2002 MRI because the Appeals Council addressed it in denying Petitioner's request for review. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). However, it can only be considered "in determining whether the Commissioner's denial of benefits is supported by substantial evidence." *Id*. It cannot be the basis for finding Petitioner disabled because "the ALJ has had no opportunity to evaluate that [Petitioner] is entitled to benefits as a matter of law." *Id*. Rather, the Court must remand to the ALJ to consider the new evidence. *Id*.

### A.     Requirements of Listing 1.04(A), Appendix 1

To meet a listing, a claimant has the burden of establishing that she "meets *each* characteristic" of the listing relevant to her claim." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (emphasis added). As relevant here, Petitioner must establish (1) that her degenerative disc disease resulted "in compromise of a nerve root," *and* (2) that there is "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss" *and* "positive straight-leg raising test (sitting *and* supine)." 20 C.F.R. § 404, Subpart P, App.1, 1.04 (emphasis added).

The findings of the 2002 MRI revealed that there were degenerative changes in the L5-S1 disc "with apparent posterior displacement and impingement of the left S1 nerve

root and compromise of the left nerve root canal with possible impingement of the left L5 spinal nerve." (AR 277.)  Petitioner contends that the MRI establishes nerve root compromise and the RFC establishes the remaining characteristics.  Alternatively, Petitioner argues that the MRI and RFC together demonstrate that she equals a listing because her impairment "is at least equal in severity and duration to the criteria" of the spinal listing.  *See* 20 C.F.R. 404.1526.

B.     **New Evidence Submitted to the Appeals Council**

Possibly because it predated the alleged onset date by several years, the 2002 MRI was not submitted in response to the records request and did not become available until after the hearing.  Because of its unavailability, Petitioner argues the ALJ erroneously concluded that "there is no evidence of nerve root compression accompanied by sensory or reflex loss, and there have been no positive sitting and supine straight-leg raising tests" and thus the listing requirements were not met.  (AR 18.)

A remand based on new evidence may only be granted where Petitioner shows that (1) the new evidence is material, and (2) good cause existed for failing to produce it earlier.  42 U.S.C. § 405(g); *Mayes v. Massinari*, 276 F.3d 453, 462 (9th Cir. 2001).  "To be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute . . . and [the petitioner] must additionally demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Id*. (internal quotations and citations omitted).  *See also Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th

Cir. 1984). Petitioner has not demonstrated either factor.

### 1. Good Cause

It was apparent at the start of the hearing on January 27, 2010, that the 2002 MRI was not in the record although it had been referenced in Dr. Rust's treatment notes on September 29, 2008. (AR 31-32; 263.) In discussing its absence from the record, the ALJ stated, "You know, I went over twice looking for it and I just didn't see it, but you know, obviously, it occurred. We have references of record to it." (AR 32.) Counsel for Petitioner did not ask the ALJ to keep the record open for a short period while he obtained a copy of the MRI. The ALJ issued her decision on March 31, 2010. (AR 15-24.) Counsel submitted the MRI to the Appeals Council on May 3, 2010. (AR 10.)

Petitioner has not explained the reason for the delay in acquiring the 2002 MRI. Therefore, she has not demonstrated good cause for failing to timely submit the MRI after it became apparent at the hearing that it was missing from the medical records before the ALJ.

### 2. Materiality

Although the 2002 MRI "bear[s] directly and substantially on the matter in dispute," there is not "a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *See Booz*, *id.* The Appeals Council considered the MRI but determined that it "[did] not provide a basis for changing the Administrative Law Judge's decision." (AR 1-2.) The Court agrees. The ALJ did not doubt that the MRI existed, and she relied on Dr. Rust's treatment notes that reference the

MRI in finding that Petitioner was not disabled. The MRI was remote in time and lost its relevance and materiality in the face of more current evidence. For example, Petitioner had worked for six years following that MRI for 9 hours a day 7 days a week. (AR 122.) Contemporaneous treatment notes were inconsistent with the RFC questionnaire. *See*, *e.g.*, AR 274 ("chronic pain is stable. Doing well.); AR 273 ("pain med is stable. Remains functional"); AR 272 ("doing well w/ her chronic pain. No other complaints"); and AR 268 ("Doing well on her meds"). Furthermore, as shown below, the ALJ found that both Petitioner and the Rust RFC lacked credibility. There simply is not a reasonable possibility that the 2002 MRI would have changed the ALJ's decision in light of the countervailing evidence.

Because Petitioner has not demonstrated either the good cause or the materiality required under § 405(g), the Court will deny the request for a remand. Without the 2002 MRI, Petitioner cannot prevail in her listing argument.

## C.    Dr. Rust's RFC Questionnaire

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Specifically with respect to medical opinion,

> The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). Although the ALJ is not bound by an expert medical opinion on the ultimate question of disability, she must provide "specific and legitimate" reasons for rejecting the opinion of a treating physician. *Lester*, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a

> detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (citation omitted).

*Tommasetti*, 533 F.3d at 1041.

In *Tommasetti*, the Ninth Circuit found that the ALJ had provided "specific and legitimate reasons" that were supported by the entire record where the physician's responses to the RFC questionnaire were essentially a "rehashing of claimant's own statements" which the ALJ had found not credible. *Id.* Further, most of the physician's records "largely reflect[ed] Tommasetti's reports of pain with little independent analysis or diagnosis." *Id.* Finally, the physician's responses to the questionnaire were not consistent with the medical records. *Id.* The court concluded, "The incongruity between Dr. Nachenberg's Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations." *Id.*

Here, similarly, the ALJ found that Dr. Rust's opinion that Petitioner is unable to perform even sedentary work was "inconsistent with the results reported in his own medical records based upon his contemporaneous examinations of [Petitioner] . . . in which he repeatedly described her as stable, moving freely, having a good quality of life, doing well, and functional." (AR 22.) *See*, *e.g.*, AR 208-10, 212, 214, 215, 218, 252-53, 254-55, 268, and 272-74. She further found that "Dr. Rust's opinion is also significantly contradicted by results of physical examinations and diagnostic tests which have

demonstrated the claimant to be normal neurologically, to have normal strength and sensation, and to have only mild L5-S1 degenerative disk (sic) disease." (AR 23.) *See*, *e.g.*, AR 190, 195, 199, and 200. Finally, she concluded that "[p]erhaps Dr. Rust assessed [Petitioner] as being significantly limited because he was trying to be as supportive as possible and comply with his patient's wishes." (AR 23.)

The Court finds that the ALJ provided the requisite "specific and legitimate reasons" for rejecting Dr. Rust's opinion. Accordingly, the second prong of Petitioner's argument that she meets or equals the spinal listing fails. Therefore, even if the 2002 MRI were considered, Petitioner could not prevail on her listing argument.

### D. Petitioner's Credibility

To reject a claimant's testimony regarding impairments, "the ALJ [is] required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of medical evidence. *Tommasetti*, 533 F.3d at 1039. Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting

a claimant's testimony.  *Id*.  Stated another way, "[t]he ALJ must support his credibility finding 'with specific, clear and convincing reasons.'" *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; claimant's daily activities; claimant's work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  In addition to those factors, the ALJ may consider prior inconsistent statements regarding the symptoms, "other testimony by the claimant that appears less than candid," and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  *Chaudhry*, 688 F.3d at 672 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Id*.

Here, the ALJ found that Petitioner's allegation of total disability due to spinal impairment was not credible.  (AR 20.)  Petitioner did not challenge that finding.  However, a review of the basis for the finding bolsters the Court's determination that availability of the 2002 MRI would not have changed the ALJ's decision.

**MEMORANDUM DECISION AND ORDER - 12**

Given that there is no evidence of malingering, the ALJ's credibility finding must be based on clear and convincing reasons. She based her credibility finding on the following factors: (1) there was a "marked degree of inconsistency between the claimant's admissions to treatment and examining medical providers and the much more extreme assertions regarding symptoms and limitations she alleged in testimony," (2) the inconsistencies "support[] a conclusion that she was attempting to embellish the severity of her impairments at the hearing in order to enhance her disability claim," and (3) her allegations of her chronic back pain to various medical sources were "suggestive of narcotic drug-seeking behavior in view of the rather minimal nature of her objective lumbar findings." (AR 20-21.)

The Court finds that the ALJ's exhaustive list of reasons supported by numerous citations to the record for finding Petitioner not credible were more than sufficiently clear and convincing and therefore permit the Court to find that she "did not arbitrarily discredit claimant's testimony." *See Tommasetti*, 533 F.3d at 1039.

## V.

## Conclusion

Based on its review of the entire record, the Court finds that Petitioner is not entitled to a remand and that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act

will be affirmed.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.



DATED: September 24, 2012

Honorable Mikel H. Williams
United States Magistrate Judge